Robert Bradley et al. v. David Sugarbaker Good morning, Mr. Rona. Good morning, Your Honor, and may it please the Court, Ilias Rona on behalf of the appellants, Barbara Bradley and her husband, Michael Bradley. With the Court's permission, I'd like to reserve two minutes. You may. Thank you, Your Honor. The Bradleys can point to two errors that were made in this case, two distinct errors made by different judges at different stages of the litigation, but have a common underpinning, a common flaw, which is taking an issue of disputed fact away from consideration from the jury. The first error involves the erroneous ruling by the trial court that, as a matter of law, a plaintiff cannot pursue a claim for battery when she has consented to some type of surgery, even if there are aspects of the consent, the scope of consent, to quote the judge, the parameters of the surgery,  How would it help you? Let's assume the case had gone to the jury on battery and everything else was the same. And for a moment, put aside all your other arguments. Given the jury finding that she would have consented had she been told what the surgery was going to do, how would the battery clause have helped you in the end of ending up any differently if your client actually were covering anything? Because that question, question number three on the jury form, is not an element of battery. Wouldn't it be part of the causation? If the jury found battery, wouldn't they need to proceed forward to causation and damages? Well, I believe the law of battery is that you can't consent to that which you didn't know. And therefore, if her consent was limited... Right, so there'd be battery, there'd be liability for battery. But what about causation? How would you get over causation to get to damages? Well, to the extent that it would... The jury did not find in this case that there was a negation of proximate cause. I think the jury found the opposite. They found by a preponderance of the evidence that the undisclosed risk or consequence actually occurred as a result of the surgery and caused injury to her. So I believe that that's sufficient to sustain the element of causation. I think getting into counterfactuals is not what is charged to the jury in a traditional battery case. Outside of medical battery, that's not the type of discussion that is entertained. In law school, they teach about the man who's horsing around and causes an injury.  Well, if you knew he was horsing around, would you be okay with it? I think the question is, was there an unconsented touching? And the burden would be on the plaintiff to show that that was unconsented to. But once the plaintiff meets that element, the plaintiff can proceed to causation damages. And in this case, damages are not hotly contested. And I believe the jury indicated what they thought of causation. The element upon which Barbara Bradley foundered is whether she would have done something different. And that is a unique species to inform consent. But you still lost me on this. I mean, suppose someone has a clear carcinoma and the surgeon doesn't get consent. He just notices it while he's got her under for some other operation. He removes the carcinoma. Under your theory, that would be battery. That's correct, and that is supported by the law. But then how would the person have been damaged if it was clear that the carcinoma had to be removed and she would have consented to it had she been woken up and told to do it? Well, again, I don't think we can take this jury verdict and say that she would have consented to the surgery that she didn't know about. And there are two elements to that, Your Honor. And I don't want to get into the other points that I'd like to make. But because they weren't sufficiently informed on the alternatives, so that will lead to my second issue. They weren't told about the alternatives. The question that we don't want to be speculating, but the jury could have thought, well, she had no alternative. And I think that Massachusetts Supreme Judicial Court has looked at this issue, both well before Harnish and just before Harnish in the case of Lubain's, which would have been an opportunity to endorse the reasoning that was applied here and say that you can't have a separate battery claim. It really is a species of informed consent. But the SJC declined to do that in Lubain's with facts that were similar. Both Reddington and Lubain's involved a situation where the judge, excuse me, the doctor got consent to get in to look under the hood and then starts to tinker beyond what the scope of the consent was. In Reddington, it was removal of the uvula despite consent only to remove tonsils and adenoids. In Lubain's, it was removing tissue from the toe despite consent limited to remove the toenail. So to answer the question, there's a whole different analysis and discussion that would have to take place to enlighten the jury about what you would have done, which would require more focus on evidence. And, again, I don't want to get to my second issue, but certainly we could explain the jury verdict simply by the lack of focus on needle biopsy. But I would contend that that question itself would not be on the jury verdict form. Even if the jury could consider that you might have done the same thing, that question itself would not be an element. And that's what the court in actually the concurrence in Feely was alluding to. They cite to a treatise on torts, a Harper treatise, where it says sometimes a battery claim may be essential. So there may be a situation, and we would submit that this could be one, where the plaintiff might not be able to prove the specific informed consent element, but would be able to prove a battery claim. And certainly the claim was made out, and I think the judge erred as a matter of law relying on essentially dicta that is contradicted by other dicta in those decisions and not by any authority by the SJC. And I would also point the court on that to Heinrich v. Sweet, in which the court actually went into hypotheticals. Well, we're not going to make an ironclad rule. What would happen in a situation where the doctor got consent to do one thing and proceeded to do another? Now this discussion in Heinrich involved whether that other was negligence. How does that help? Just as a policy matter, under your battery theory, you would always have to have as an element inadequate consent, inadequate disclosure by the doctor of what the doctor was going to do. Well, the way it would help, Your Honor, is if I understand the question. So you'd always have a medical malpractice claim by definition in every single situation in which you'd have a battery claim. I believe that that's correct. So how does it help to layer on a battery claim? Well, in many cases, you don't have a malpractice claim distinct from either informed consent or battery, meaning that if the patient undertakes to do a treatment that within the patient's discretion, maybe I wouldn't do, maybe other people wouldn't do, but the patient would have that right to proceed, that wouldn't make out a malpractice claim. That would make out if there was inadequate information in an informed consent claim. But as a policy matter, the way having a concurrent battery claim helps is that it promotes the patient autonomy that Harnish was designed to do. Harnish did not intend to contract the law. And the only way you can read the trial court's decision in this case is that there's been some contraction, that there was this common law toward a battery that we don't like anymore and we want to eliminate it. And he concludes that it's as a matter of law, regardless of whether there's genuine material issues of fact. And that goes in the wrong direction. That tilts back to the paternalism of the past that the SJC was trying to eliminate. On the second issue of preclusion of Dr. Putnam, plaintiff-surgeon, that decision, there were several opinions that were excluded, and I'm just going to focus on two of them because those were legal errors and so subject to de novo review. One was the preclusion of Dr. Putnam's testimony about the standard of care to perform a needle biopsy. A needle biopsy is a less invasive way of getting the tissue that Dr. Sugarbaker was purporting to get. And what he got consent for was to get tissue to do a biopsy. It is this court and other courts have commented on the fact you can't win a malpractice case without an expert. And so courts don't have the discretion to punt an expert for invalid reasons. There's no question that Dr. Putnam was well qualified to give the opinion he gave. And all that is required then is to have an adequate foundation. Well, with his experience and credentials, he is well equipped and has the foundation to provide a standard of care opinion. What was the district court's reason for excluding that opinion? Well, the best I can say is that it was based on a number of statements that were made that were really factual in nature. And so there's a temptation to think it was a factual error. Was it based on a conclusion that all of the evidence to date was that a needle biopsy was not available? Well, if that were his conclusion, that would have been, I think, clear error because there was ample evidence to the contrary. I think what he said, and this gets to my second point and why I think it's a legal error, what he said was that it was an option until it stopped being an option. And that runs afoul of this court's decision in Harrison and on remand, the district court's decision on the follow-up case. What does it mean? What does that mean? Yeah, it was an option until it stopped being an option. The best that I could say is that what he was saying was that nobody was considering it from the medical side. So it was mentioned, and we can't claim it was never mentioned. It was mentioned. It was discussed. But it was not discussed in the context that it should have been, and then it ceased to be an option after a phone call that Barbara Bradley received from Dr. Sugarbaker's assistant, Mr. Hunt. Now, what's peculiar about this decision, and Judge Stern's comments on it in his summary judgment decision, is he didn't remember this conversation. It's not in the medical record, and it contradicts what is in the medical record that you would expect to see in relation to this conversation. What happens is they go to the interventional radiologist, Dr. Jacobson, who, by the way, did not testify at trial, she didn't appear, and said, what sayeth you? And she said, this looks more inflammatory, i.e., less cancerous. Let's do a repeat PET scan, which they did. The next day, Mr. Hunt calls Barbara Bradley and says, a needle biopsy can't be done. There's no evidence to support that statement. It cannot be done. Would you like to come in for a PET scan? Which she agreed. But doesn't that help you? Instead of telling her that she had this option, they actually weren't just silent. They affirmatively told her it couldn't be done. That's correct. And Dr. Putnam said, to the extent that the way his report was written, to the extent she was dissuaded from pursuing it, and I would argue that having the assistant of the surgeon calling you at your house and saying it can't be done is dissuasion, especially when there's no corroboration of that in the medical record. So I think the mistake is that in Harrison, what this court said is you cannot excuse yourself from your duty to disclose simply because you won't do something. So I'm an OBGYN. I don't believe in C-sections. We're going to do it the natural way. That doesn't excuse me from having to disclose it. I have to say there's a doctor down the hall who would be willing to do that. What has happened in this case is Dr. Sugarbaker says, well, I don't do needle biopsies. I'm not an interventional radiologist. Talk to Dr. Jacobson. And she says the same thing, if you believe Mr. Hung, that the doctor in Harrison said, I don't want to do it. Now, of course, she didn't come in and say that, so we're relying on sort of totem pole hearsay. But it's the same area. You're circumventing the requirement of giving full disclosure simply because it doesn't appear that the doctors that are talking to you want to do it. And that's the mistake that the trial court made by excusing the obligation to That's the error, the legal error that would require reversal on the preclusion of plaintiff's surgical expert establishing standard of care on negligence and the availability of a reasonable alternative that should have been disclosed. Thank you. Good morning. Good morning. May it please the court, Carol Kelly for Dr. Sugarbaker. To start with the second issue, the trial court properly excluded the testimony, the proposed testimony of Dr. Putnam, because it wouldn't have been relevant to any of the issues being submitted to the jury. As an initial matter, I'd point out that there simply was no proffer of what Dr. Putnam's anticipated testimony would be at the time that the judge precluded that ruling. And for that matter, there's nothing before this court upon which it could rule that that would be the case.  I think that the trial court should have been able to do that and cause prejudice requiring a new trial. I'm confused by how you say that. The court was, there's an expert disclosure of five pages and the court was referring by number to the paragraph, what appeared to be the paragraphs in that expert disclosure, and then asking questions. So we have a transcript of counsel explaining to the judge what each of those are. There's been a deposition of the doctor before that. So how do you tell us there was no proffer? The question was, with respect to the fine needle aspiration issue, there was nothing that the judge was told that Dr. Putnam intended to testify to specific to the fine needle aspiration, the parameters of the surgery, or the fine needle aspiration as carrying particular risk. What the disclosure said was Dr. Putnam proposed to testify to the fact, his opinion, that had the patient not been offered this, then it would have been negligent. And secondly, that if the doctor had dissuaded the patient from having a fine needle operation or procedure, that that would have fallen below the standard of care. But neither of those proposed pieces of evidence would have been relevant. Why not, if the jury didn't know that the fine needle aspiration was an alternative diagnostic course that would change the treatment options, then how could the jury fairly decide that she would have consented to the wedge resection had the wedge resection been disclosed to her, not knowing about the fine needle aspiration? Well, for a few reasons. First, there was no evidence that Mrs. Bradley was unaware of fine needle aspiration as an option. Well, that's not fair. When we look at the evidence, we have to assume that it's true that your client's assistant called her up and told her it was not an option. That in this case it wasn't an option, but it's not true that she was unaware of what a fine needle aspiration is or that in some instances it might be appropriate. In this case, don't we have to assume as an appeal court reviewing this exclusion that your client's assistant told her it wasn't an option and she wanted to present an expert who would say that was flatly wrong and it was an option and it would have changed her diagnostic alternatives? That wasn't part of his disclosure. What his disclosure was, excuse me, Your Honor, was that it would be reasonable, and this is at page 218 to 219 of the record, that it would be reasonable for the surgeon to rely on the radiologist. Who would be the doctor to perform that procedure? Let me interrupt you there because I don't think you're reading the right thing. Number two of his disclosures, which the court excluded, says if a surgeon dissuaded the patient from consideration of needle biopsy, and here there was testimony that the surgeon's assistant dissuaded the patient from consideration of needle biopsy by telling her it was not available, then an alternative to diagnosis of the superior sulcus tumor, which would modify the patient's treatment options, the surgeon departed from the standard of care. Why shouldn't the jury be told that? Because Dr. Putnam testified at his deposition, and this was all part of the record, that it would be reasonable for the surgeon to rely on the radiologist's opinion that the fine needle aspiration was not appropriate in this case. But there was a factual issue, there was a factual dispute as to whether that radiologist's opinion was communicated to the doctor. He said it was, but there's no mention of it in the medical record, so isn't that an issue for the jury? It's not an issue for the jury, Your Honor, because in this instance Dr. Putnam didn't disagree with the approach that Dr. Sugarbaker was taking in advising the patient of her options. He was saying that it's Dr. Sugarbaker's reliance on the radiology that's important here. The radiologist would be the one to perform this procedure and decide if it was available in this case. And several radiologists testified that it was available in this case and they would have performed it. In this instance, Your Honor, we're talking about Dr. Putnam's testimony and Dr. Putnam's testimony doesn't go anywhere for a couple reasons. First, if the fine needle aspiration had been performed, it was undisputed that it would have been negligent and Dr. Putnam It would have been negative. It would have been negative. And Dr. Putnam testified that if it was negligent or if it was performed, then it would have been appropriate, it would not have been negligent to go on to the next procedure. So fine needle aspiration really drops out of the picture. Well, but wait. I read his testimony, including his deposition testimony, and what he actually says is that it would have created an alternative operation of a further biopsy and then some watching and waiting and the patient could have had that as an alternative to having a wedge resection. Your Honor, in this instance, the fine needle aspiration, the initial procedure would have come up negative. Then the patient would have had the further procedure, which is what was done in this case. And Dr. Putnam doesn't disagree with that. What page – I don't see that in his – certainly it's not in his report. What are you relying on to say that Dr. Putnam agrees that necessarily would have been the wedge resection as the follow-on procedure as opposed to the patient reasoning that now that I've got a negative fine needle aspiration, the odds have changed, this wedge resection doesn't sound great to me, and I've got an alternative. Your Honor, Dr. Putnam – excuse me. So what page of the – where are you referring us to that you say this concession was made? At page 218 to 219 of the record, Dr. Putnam, paragraph 26 of this statement of whether it was reasonable for the surgeon to rely on the radiologist. That's the key point there. Right, but there's a factual dispute as to whether the radiologist said that a fine needle aspiration couldn't be done. Your Honor, it sort of comes back to the issue of what was appropriate for the patient to be told. And Dr. Putnam's testimony has to comment to that. Let me just stay with the point. Am I correct that there was a factual dispute regarding whether or not the sugar baker that a fine needle aspiration could not be done? I don't believe so, Your Honor. Then how do you explain the absence of any mention of that in the medical records? I'm not sure I can explain that, Your Honor, because – And doesn't that create a factual dispute? Isn't a plaintiff entitled to say a radiologist's bottom line opinion, if it's not mentioned in the medical records, the jury could disbelieve the doctor that it was told to him or else he would have mentioned it in the medical records? Not under Massachusetts law, Your Honor, because under Massachusetts law, the absence of an entry in a medical record doesn't support an inference that something wasn't done. So in other words – And what's your authority for that? I believe it's Campbell versus Thornton, Your Honor, the SJC case of that. If it's not that case, may I leave to submit a citation to the court post argument? I can represent to the court that I'm aware that Massachusetts law does, in fact, hold that the absence of an entry in a medical record doesn't warrant an inference that something wasn't done. And that makes sense, because it's certainly not possible for every single statement, every single thing that a patient – that is done to a patient to be recorded in the record. The records are summary. So if the doctor says, I took an x-ray, but there's no x-ray film, no report from a radiologist, the jury can't infer that the doctor might be lying? Well, in that case, Your Honor, that would be very different. Things are on a spectrum. If, for example, a patient's in the emergency room and a physician comes in, takes pulse, respiration, blood pressure, observes the patient, and simply writes down vitals normal, that's a summary of something. The medical records aren't necessarily a contemporaneous item by item list of what happens to a patient or what a doctor does. But here Mrs. Bradley testified that that's what Dr. Mr. Hung told her, that FNA wasn't an option. And in any event, what the jury decided ultimately was that had Mrs. Bradley been told the information that Dr. Sugarbaker was alleged to have not told her, she would have had that – a reasonable person or she would have had that procedure anyway. And that's where you sort of have to come back to what the essential elements are under Massachusetts law of an informed consent claim. It's not for an expert to opine that a patient should be told something. It's a much more nuanced analysis. What Harnish and his progeny say are that the elements of that claim are first, the plaintiff has to show what the reasonable qualified physician in that physician's position should know about the relevant risks and benefits. That's what's subject to expert testimony. And Dr. Putnam, his testimony as to what he thinks should be disclosed is simply irrelevant. What Harnish says is first the patient has to introduce evidence of what, under the standard of care, a physician should know about risks and benefits and sort of the parameters of what the risks and benefits are of a particular treatment. Once that expert testifies to that, then the jury decides, based on its experience and its laid sort of determination, whether the undisclosed risks that weren't told to the patient, if they find some, were material. And materiality is for the jury to decide. Help me on that because I've looked at Harnish and I read the statement by the court that standard and acceptable medical practice required that the plaintiff be told of this option and not dissuaded from it. Because that's the conclusion, Your Honor. What Harnish, and I think pre-court is more informative on this, say, is that what expert testimony is supposed to disclose is not the case.     It's not the case. It's not the case. And so what I'm trying to describe is the relevant risks and benefits of the procedure or the proposed treatment or under feeling non-treatment. So, for example, an expert would say the risks of undergoing this type of procedure include, say, a 50 percent risk of infection, of bleeding, whatever the risks are. This has to be some identification and, more importantly, quantification of the relevant risks. And that an average qualified physician in a surgeon's position should know of those risks. So what Harnish and pre-court say is what the doctor should know is what expert testimony is supposed to pertain to. Whether that information is material to the patient's decision to undergo the procedure is for the jury. What the jury looks at is, given what the doctor should have known, they look at the risk, the determination is no, that wasn't told to the patient. Then they're asked to decide, was the undisclosed information something that a reasonable patient in this person's position would have considered important to a decision to undertake that treatment? And, in addition, it's both an objective and a subjective component. In fact, would this patient not have undergone the procedure had they known about that? And the issue of materiality, again, it goes to the jury. They look at the risks, as they've been described by the expert, and the benefits, as described by the expert, in relation to sort of the severity. And that's why Harnish and pre-court say even a low risk of a severe harm might need to be disclosed. A high risk of a not severe harm might need to be disclosed. But, again, that's all for the jury's determination. It's not a situation where a plaintiff puts on an expert who says it was a breach, it's mixing apples and oranges. The expert doesn't come in and say, in my opinion, this doctor failed to obtain informed consent because it was a breach of the applicable standard not to disclose these particular risks. The expert's role is very different than in a medical negligence claim. The expert also is necessary to testify that the undisclosed risk actually materialized and caused harm to the patient. So that causal connection, that link, the causally related damages, is something that in many instances might need expert testimony. And here there's a deficit as well. The plaintiffs suggest that the jury's answers to the informed consent questions somehow can be read to interpret that the fine needle aspiration wasn't disclosed to the plaintiff. That's not logical from here. Instead, what we know, we look at the risk that did, in fact, materialize. It was an infection. And the infection, as the record is clear, is something that Mrs. Bradley was aware of could be the result of any procedure. So she consented to undergo the operation and she developed the infection. With respect to the battery claim, if I may, on the issue of the battery, we're not arguing that having consented to the surgery, Mrs. Bradley consented to Dr. Sugarbaker doing, I think the plaintiff's words were something to the effect of whatever he wanted or however much of a procedure he wanted. She consented to a biopsy. What was done was a biopsy. The purported description of part of the biopsy as a wedge resection really is a distinction without a difference. Dr. Sugarbaker began removing tissue. There were frozen sections performed. Those reported back as negative. The continued removal of tissue was all part and parcel of the biopsy. And there's no expert evidence in this record whatsoever to suggest that the removal of the wedge as part of the procedure was separate and distinct from the biopsy. Thank you, Your Honor. Thank you. Briefly. The medical record shows that the wedge resection was distinct from biopsy. The pathology slips in the report shows that there were five biopsies done, all returned negative for cancer. This was at 1030. Then there was an air leak. Then there was a wedge resection, which was taken to pathology. Only representative samples, not the whole thing, was biopsied. But before that result came back, the surgery was declared ready to close. Even though if there had been cancer, Barbara Bradley would have undergone immediately a cervical mediastinoscopy, which would have been necessary to see if the cancer had spread to the lymph nodes. So Dr. Sugarbaker was confident there was no cancer before he did the wedge resection, which involves healthy lung tissue. So we would disagree that it's a distinction without a difference to have healthy lung tissue removed. Just to rebut a couple of other points going back to the needle biopsy. Disclosing the existence of a technique is not sufficient. The layperson might think they know what a needle biopsy is, but they would have no way of comprehending what that entails, the diagnostic path, the steps. And so it's not sufficient to say, hey, there's a technique, but we're not going to really talk about it. And Harness requires that you actually compare and contrast. And you give a viable option down one path or the other. That was simply not done here. With respect to standard of care, even if the argument was true that you can't give a standard of care opinion in informed consent, and I would disagree with that, and I'm going off the top of my head, but I believe the Kissinger case talks about standard of care, this court, for informed consent. But certainly that's required in a negligence case. That's the only way to get it is through expert testimony. So if the argument is true for informed consent, it's not true for negligence. You have to be able to talk about the standard of care. And the last point I just want to read, this is on the issue of whether Dr. Sugarbaker would have relied on a radiologist. I'm going to quote from him. Nobody at the Brigham is going to, would try to do a needle biopsy on a patient without clearing it with me. The decision making is mine. Thank you, Your Honors.